IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAY STOCKING, an Individual;<br><br>Plaintiff,<br>v.<br><br>MICHAEL SIMONOVICH, an Individual; KELLY SHARPENTER, an Individual; and PERIPHERY CAPITAL MANAGEMENT GROUP, a Wyoming Corporation.<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS**<br><br>Case No. 1:19-cv-00021<br><br>District Judge Jill N. Parrish |

Before the court is a joint motion to dismiss filed by Defendants. Defendants argue that Plaintiff's Complaint should be dismissed because the court lacks personal jurisdiction over each Defendant and that venue is improper. Alternatively, Defendants argue that the court should transfer this matter to a federal district court in Wisconsin,[1] where one of the Defendants resides. Plaintiff opposes both the motion to dismiss and the motion to transfer venue. For the reasons below, the court **DENIES** the motion.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jay Stocking ("Plaintiff") is an individual residing in Box Elder County, Utah. Defendant Michael Simonovich ("Simonovich") is an individual residing in Racine County, Wisconsin. Defendant Kelly Sharpenter ("Sharpenter") is an individual residing in Winnebago

---

[1] Defendants do not specify whether the matter should be transferred to the Eastern or Western District of Wisconsin. However, Racine County, Wisconsin, where one of the Defendants resides, is located within the Eastern District of Wisconsin.

1

County, Illinois. Defendant Periphery Capital Management Group ("PCMG") is a Wyoming corporation with its principal place of business in Laramie County, Wyoming.

Plaintiff commenced this action on January 25, 2019 by filing a complaint in the First Judicial District, County of Cache, State of Utah, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraud. On March 14, 2019, Defendants timely removed Plaintiff's Complaint to this court.

Plaintiff alleges that on or about September 28, 2017, Plaintiff and PCMG entered into an Assignment Agreement. Complaint at ¶ 7. Plaintiff avers that Defendant Simonovich approached him and solicited Plaintiff's involvement in a project "because of his knowledge of [Plaintiff's] experience in real estate construction and development in the State of Utah, which [they] had discussed several times." Stocking Declaration at ¶¶ 4-5. Additionally, Plaintiff alleges that all terms of the business relationship and contracts between Defendants and Plaintiff were negotiated via email, text message, or phone call with Plaintiff while he was in the State of Utah. *Id*. at ¶¶ 9-10. According to the terms of the Assignment Agreement, PCMG agreed to transfer to Plaintiff "the entirety of the assignor's contractual rights and obligations under the contract dated June 15, 2017." Complaint at ¶ 8. The June 15, 2017 Contract is a Promissory Note between Sharpenter and PCMG. *Id*. at ¶ 9. Under the terms of the Promissory Note, Sharpenter was obligated to pay PCMG (now Plaintiff) a monthly payment on the first day of each month, beginning January 1, 2018 and ending on January 1, 2020. *Id*. at ¶ 13. Plaintiff alleges that he never received the monthly payments that were due, and instead, PCMG has been receiving the payments instead. *Id*. at ¶¶ 15-16.

On March 21, 2019, Defendants jointly moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion.

## II.    RELEVANT LAW

### A.    Choice of Law

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938)). To determine whether a state law is substantive, and therefore applicable in federal court, the court must decide whether the application of the law is outcome determinative. *Id*. at 427-28. "If a state law 'concerns merely the manner and the means' by which substantive rights are enforced, it is procedural, but if its application would 'significantly affect the result of a litigation,' it is substantive." *Racher v. Westlake Nursing Home Limited Partnership*, 871 F.3d 1152, 1164 (10th Cir. 2017) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). In this matter, federal procedural law and Utah substantive law are applicable.

### B.    Personal Jurisdiction

When a defendant moves to dismiss a plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. American So. Insu. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). "If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further." *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "[B]ut where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The Plaintiff "may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*, 514 F.3d

3

1063, 1070 (10th Cir. 1988). The court must "resolve any factual disputes in the plaintiff's favor." *Shrader*, 633 F.3d at 1239.

### C. Venue

Under 28 U.S.C. § 1391, a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Defendants may, however, move to dismiss Plaintiff's complaint if venue is improper pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. The Supreme Court has stated the following regarding a motion to dismiss based on improper venue:

> Rule 12(b)(3) allow[s] dismissal only when venue is "wrong" or "improper." Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws. Title 28 U.S.C. § 1391, which governs venue generally, states that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in" federal district courts. § 1391(a)(1). It then defines districts in which venue is proper. See § 1391 (b). If a case falls within one of § 1391(b)'s districts, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).

*Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 50 (2013).

Alternatively, parties may request the court to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice. . . to any other district. . . where it might have been brought." 18 U.S.C. § 1404(a). In determining whether to transfer a case pursuant to 18 U.S.C. § 1404(a), courts may weigh several discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgement if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and [ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emprs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

### III. DISCUSSION

**A. Personal Jurisdiction**

To obtain personal jurisdiction over Defendants, "plaintiff must show that jurisdiction is legitimate under the laws of the forum state and the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Rambo* 839 F.2d at 1416. In Utah, to obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must establish that: (1) the defendant conducted certain enumerated activities in Utah, and (2) there is a nexus between plaintiff's claim and defendant's conduct. *See* Utah Code Ann. § 78–27–24.

*1) Enumerated Activities*

Utah's long-arm statute provides for jurisdiction over a non-resident based upon a claim arising from seven enumerated acts, including:

(1) the transaction of business within this state;

(2) contracting to supply services or goods in this state;

(3) the causing of any injury within this state whether tortious or by breach of warranty;

(4) the ownership, use or possession of any real estate situated in this state;

(5) contracting to insure any person, property, or risk located within this state at the time of contracting;

5

(6) with respect to actions of divorce, separate maintenance, or child support, having resided, in the marital relationship, within this state notwithstanding subsequent departure from the state; or the commission in this state of the act giving rise to the claim, so long as that act is not a mere omission, failure to act, or occurrence over which defendant had no control; or

(7) ) the commission of sexual intercourse within this state which gives rise to a paternity suit under Title 78B, Chapter 15, Utah Uniform Parentage Act, to determine paternity for the purpose of establishing responsibility for child support.

Utah Code Ann. § 78–27–24. Utah law defines the "transaction of any business within this state" as "activities of a non-resident person, his agent, or representatives in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23. Because Defendants' conduct affected Plaintiff, a resident of Utah, the court finds that Defendants transacted business in the state of Utah.

    2)  *Nexus Requirement*

Utah law also requires that the conduct of which Plaintiff complains "arises out of" Defendants' contacts with the state. Based on Defendants' solicitation of Plaintiff's business in this state, the court finds that Plaintiff has met his burden of showing that his claims arise out of Defendants' transaction of business. [2]

    3)  *Due Process*

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe*

---

[2] Because Utah's long-arm statute must "be applied so as to assert jurisdiction over non-resident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution," *Utah Code Ann*. § 78B-3-205, courts may opt to proceed straight to the due process analysis. *Arguello v. Indus Woodworking Mach. Co.*, 838 P.2d 1120, 1122-23 (Utah 1992).

*Co. v. Washington*, 326 U.S. 310, 316 (1945)). Those contacts are sufficient if the defendant "purposely avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The purposeful availment requirement of the minimum contacts test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitious,' or 'attenuated contacts, [citations omitted] or of the 'unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). As the Tenth Circuit has explained:

> Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff.... [and generally] requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.

*Rambo* 839 F.2d at 1420.

Here, Defendants specifically solicited Plaintiff's business "because of his knowledge of [Plaintiff's] experience in real estate construction and development in the State of Utah, which [they] had discussed several times." Stocking Declaration at ¶ ¶ 4-5. The terms of the business relationship were all negotiated via text messages, emails, and phone calls while Plaintiff was residing in Utah. While none of these factors in isolation would support a finding that Defendants have "purposefully availed" themselves of conducting business in the state, the totality of circumstances establish that Defendants took affirmative steps to contract with Plaintiff in the State of Utah. Thus Plaintiff has established Defendant's purposeful availment.

The court also finds that defending a lawsuit in the State of Utah would not offend notions of fair play and substantial justice. When evaluating these factors, the Supreme Court has stated:

> [C]ourts. . . may evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies. . .

*Burger King*, 471 U.S. at 477, (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 at 292 (1980)). Here, Plaintiff has made a prima facie showing that the majority of the negotiations, Defendants' solicitation of Plaintiff, and the legal ramifications were all centered around Utah. Furthermore, all the Defendants reside in different states. Thus, Utah has the strongest connection to the facts, and notions of fair play and substantial justice weigh in favor of adjudication of this matter in the State of Utah.

### B. Venue

Defendants alternatively argue that the court should dismiss this case because venue is improper or transfer the case to a federal district court in Wisconsin.

#### 1) *Dismissal Based on Improper Venue*

Defendants argue that that because "(1) no Defendant resides in Utah, (2) a substantial part of the events, omissions, or property related to this action have no ties to Utah, and (3) the Court does not have personal jurisdiction over any Defendant, the Court should dismiss Plaintiff's Complaint because venue is improper in this Court." Defendants' Motion at 11 (citing 28 U.S.C. § 1391).

The court finds that Defendants have not established that "venue is 'wrong' or 'improper.'" *Atlantic Marine*, 571 U.S. at 50 (2013). It therefore denies the motion to dismiss based on improper venue. First, while it is true that no Defendant resides in Utah, there is no state where all three Defendants reside.[3] Second, Plaintiff has made a prima facie showing that a majority of the events related to this action, such as the negotiation of the terms of the contract, the signing of the contract,

---

[3] As noted above, Simonovich resides in Wisconsin, Sharpenter resides in Illinois, and PCMG is a corporation with its headquarters and principal place of business in Wyoming.

and the initial loan payment, all occurred in Utah. Finally, the court has found that it does have personal jurisdiction over Defendants. Accordingly, venue is proper under 28 U.S.C. § 1391.

        *2)*      *Transfer of Venue*

Defendants alternatively argue that this matter should be transferred to a federal district court in Wisconsin because Simonovich, the principal point of contact, resides there; most of the witnesses relevant to this matter would be "in or around Wisconsin;" possible conflicts of laws in this matter that may be resolved by transferring this case there; and potential issues with obtaining compulsory process for witnesses located outside of Utah.

The court finds that Defendants have not met their burden to establish that the suit should be transferred to a Wisconsin federal court. First, the Plaintiff's choice of forum, Utah, should be given deference.[4] Second, while Simonovich resides in Wisconsin, Plaintiff, who was the other party in the transactions, resides in Utah. Accordingly, there is no single jurisdiction where the majority of the parties reside. As the court has already noted, each of the Defendants in this case reside in different states. Third, Defendants do not address why conflicts of laws issues would be resolved in favor of Wisconsin or which witnesses (besides Simonovich) reside in Wisconsin. Finally, and most importantly, the court has found that a substantial number of events related to this action occurred in Utah. Thus, the court finds that the concerns raised by Defendants are speculative at best, and that the balance of interests is not "strongly in favor of the movant" in this case. *William A. Smith Contracting Co., Inc. v. Travelers Indem. Co*., 467 F.2d 662 (10th Cir. 1972). Thus, Plaintiff's choice of forum should not be disturbed.

---

[4] Defendants argue that "[t]he Court should not give deference to Plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." Docket No. 4 at 13 (citing *Emprs. Mut. Cas. Co. v. Bartile Roofs Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)). But the court has found that the facts giving rise to this lawsuit *do* have significant relation to the State of Utah. Thus, Plaintiff's choice of forum should be given deference.

## IV. ORDER

For the aforementioned reasons, Defendants' motion to dismiss or, in the alternative, transfer this matter is **DENIED**.

Signed May 26, 2020.

                            BY THE COURT

                            _____
                            Jill N. Parrish
                            United States District Court Judge