IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAY STOCKING,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL SIMONOVICH, KELLY SHARPENTER, and PERIPHERY CAPITAL MANAGEMENT GROUP,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:19-cv-00021-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

       This case comes before the court on two motions for summary judgment. Plaintiff Jay Stocking ("Stocking") moves for summary judgment against defendants Michael Simonovich ("Simonovich"), Kelly Sharpenter ("Sharpenter"), and Periphery Capital Management Group ("PCMG") (collectively, "Defendants") on Stocking's third cause of action. Defendants move for summary judgment in favor of defendants Simonovich and Sharpenter on Stocking's second, fourth, and fifth causes of action.

**FACTUAL BACKGROUND**[1]

       This case arises from several alleged transactions between Stocking and PCMG. Simonovich, along with Robert Carter, started PCMG to engage in trading for clients. Stocking initially came into contact with PCMG through a mutual friend who introduced Simonovich and Stocking and indicated that Simonovich was "good in the trading world." ECF No. 34-1 at 4.

---

[1] The facts in this Factual Background section are undisputed unless otherwise noted.

1

Stocking set up accounts at several banks. He provided the account login information to PCMG so that PCMG could place trades with the money in the accounts. For about six months, PCMG traded the money in the managed accounts. According to Stocking, he initially placed about $200,000 in the managed accounts for Carter and Simonovich to invest. The accounts had about $240,000 in them when PCMG lost all of the money trading options.

At some point during their business relationship, Simonovich reached out to Stocking to solicit an investment. Although the investment ran through PCMG, Stocking understood that Simonovich did not want the deal to involve Carter but rather intended it to be between Stocking and Simonovich. Stocking understood that the money would be used to finalize a real estate contract. Stocking testified that Simonovich offered him this investment opportunity because Simonovich felt like it was a safe investment and Simonovich wanted to offer an investment with a good return on Stocking's money because Simonovich had some losing deals with Stocking's account in the market. Defendants characterize the transaction differently. Defendants state that Simonovich contacted Stocking about an investment opportunity in trading options that looked to have a better return on investment than his prior investments. Regardless of whether the investment was in real estate or stock options, Stocking wired $225,000 to PCMG. As security for Stocking's investment, PCMG assigned the rights of a promissory note between Sharpenter and PCMG (the "Sharpenter promissory note").

Stocking never made any other wire transfers to Simonovich. Indeed, the only other transfer that Stocking could recall at his deposition was an approximately $10,000 check for the commission on profits made in the first round of trading.

On October 10, 2017, PCMG issued a promissory note to Stocking (the "promissory note"). The note stated that "for value received, [PCMG] promises to pay [Stocking] . . . the

principal sum of $335,000.00 USD, without interest payable on the unpaid principal, beginning on October 12, 2017." ECF No. 31-1 at 2. The promissory note does not indicate what "value" PCMG received in exchange for the promissory note. The promissory note stated that it would "be repaid in full on December 29th, 2017." *Id.* It further stated that it "[s]ecured by a note in the amount of $525,000 that note is secured by real estate and has been assigned to lender already." *Id.* Stocking claims that PCMG issued this promissory note in exchange for his $225,000 investment. Defendants dispute that fact.

In the end, neither Simonovich, Sharpenter, nor PCMG made any payments to Stocking.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted).

"At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Instead, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

## ANALYSIS

### I. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Stocking argues that the court should grant summary judgment on his third cause of action, breach of contract for the promissory note. Breach of contract requires a plaintiff to show "(1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the express promise by the defendant; and (4) damages to the plaintiff resulting from the breach." *Christensen & Jensen, P.C. v. Barrett & Daines*, 194 P.3d 931, 938 (Utah 2008) (citation omitted). Stocking alleges that there is no genuine dispute of material fact that the promissory note is a valid agreement, that Stocking fully complied with his obligations under the note, and that Defendants have failed to make payments required by the promissory note.

Defendants do not contest Stocking's assertion that they have not made any payments under the promissory note. Rather, Defendants assert that the promissory note fails for lack of consideration. Moreover, Defendants contend that the court cannot grant summary judgment against Simonovich and Sharpenter because neither individual defendant is a party to the promissory note.

The court begins by addressing the enforceability of the promissory note against PCMG. The court then turns to whether Stocking can hold Simonovich or Sharpenter personally liable under the promissory note.

#### A. PCMG

Stocking bears the initial responsibility of demonstrating that no genuine issue of material fact exists as to the validity of the promissory note. *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of

material fact exists and that it is entitled to summary judgment as a matter of law." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))).

Stocking has established a prima facie case that the promissory note is valid and enforceable against PCMG. Under Utah[2] law, "the production of the [promissory] note and proof of the defendant's signature establish a prima facie case which entitles the plaintiff to a verdict." *Hudson v. Moon*, 130 P. 774, 776-77 (Utah 1913) (holding that the rule in *Perley v. Perley*, 10 N.E. 726, 728 (Mass. 1887) is "the logical one"); *see also Cannon v. Wright*, 531 P.2d 1290, 1291 (Utah 1975) ("[I]t was proved that the defendant . . . had signed the promissory note; and that inasmuch as it was in the possession of the plaintiff, that constituted a prima facie case that the note had been duly executed and delivered, for a valuable consideration, and that defendant was obligated to pay it."). Stocking produced the promissory note. *See* ECF No. 31-1. Defendants do not dispute that a representative for PCMG signed the promissory note. *See* ECF No. 34 ¶ 7. Accordingly, Stocking has made out a prima facie case as to PCMG.

While the production of the promissory note with a valid signature establishes a presumption of consideration, "if there is any evidence in the case [of lack of consideration] on behalf of the defendant, the plaintiff must show, by a preponderance of the whole evidence, that the note was given for a valuable consideration." *Hudson*, 130 P. at 776-77 ("While the production of the note, with the admission of proof of the signature, makes a prima facie case, yet if the defendant puts in evidence of a want of consideration, the burden of proof does not shift, but remains upon the plaintiff, who must satisfy the jury, by a fair preponderance of the

---

[2] The court applies Utah law according to the choice of law provision in the promissory note: "This Note will be construed in accordance with and governed by the laws of the State of Utah." ECF No. 31-1 at 3.

5

evidence, that the note was for a valuable consideration."). In other words, the Utah Supreme Court has held that:

> in a suit on a negotiable instrument the instrument is deemed prima facie to have been given for a valuable consideration, and every person whose signature appears thereon to have been a party thereto for value; that upon an issue of an illegal consideration the plaintiff makes out a prima facie case of a valuable and legal consideration by the production of the note and proof of signature, and may then rest on the presumption of a valuable consideration; that the burden of evidence, or duty of proceeding, if he chooses to overcome such presumption, then devolves on the defendant to bring forward evidence tending to show an illegal consideration, which, if done by him, dissipates or overcomes the presumption, then if the plaintiff seeks to overcome the effect of, or encounter, the evidence so adduced by the defendant, he is required to support the presumption by producing evidence showing a valuable and legal consideration.

*Id.* at 777.

Accordingly, the threshold question is whether Defendants offered evidence tending to show a lack of consideration. If the court answers that question in the affirmative, Stocking then bears the burden of producing evidence of the particular consideration. But, if the court answers that question in the negative, Stocking need not make any further showing of consideration.

The parties agree that Stocking wired $225,000 to PCMG. Defendants argue that "[t]here is no indication that the $225,000 was the value received by PCMG related to the promissory note." ECF No. 34 at 3. Indeed, the promissory note itself does not indicate the amount of the "value received" for the note. *See* ECF No. 31-1. Nor does the wire transfer include any details regarding the purpose of the payment. And Stocking admits that he made no further wire transfers to PCMG. If, as Defendants argue, the $225,000 was unrelated to the promissory note, that tends to show no consideration for the promissory note. Moreover, Stocking's own complaint alleges that he transferred $335,000 to PCMG in exchange for a promissory note providing for repayment of the $335,000. *See* ECF No. 2-1 ¶ 17. But the alleged value of that transfer does not align with the $225,000 that Stocking now claims represents consideration for

6

the promissory note. The burden thus remains with Stocking to adduce evidence showing consideration for the promissory note.

Stocking argues that "the uncontested testimony of Plaintiff states that the $225,000 was relating to a property deal, and no evidence exists on the record that the $225,000 transfer relating to a property deal relates to some deal other than the one referenced in the promissory note." ECF No. 35 at 7. Stocking correctly states that his uncontested testimony establishes that the $225,000 transfer was for the purposes of funding a real estate transaction. But Stocking has produced no evidence that the promissory note related to the real estate transaction for which Stocking transferred the $225,000 amount—or to any real estate transaction at all. Indeed, the evidence cited by Stocking is ambiguous and confusing. As evidence that Stocking transferred Defendants $225,000 in exchange for a promissory note in the amount of $335,000, Stocking cites to (1) the promissory note and (2) Simonovich's deposition stating that his signature appears on the promissory note. ECF No. 31 at 2 n.1. But the promissory note contains no explanation of the "value received" nor any description of the intended use of the "value received," i.e., the project to be funded by the "value received." Moreover, Stocking admits he engaged in other business with PCMG. And Stocking never specifies—either in his deposition or in a sworn statement—which transaction gave rise to the promissory note. Accordingly, Stocking has failed to bear his burden of demonstrating that he paid valuable consideration—here, the $225,000—in exchange for the promissory note.

Consideration is required for a valid promissory note. *Alexander v. DeLaCruz*, 545 P.2d 518, 519 (Utah 1976) (requiring "legal consideration" to render a promissory note binding). And because Defendants have presented evidence that the promissory note lacked consideration, the burden remains on Stocking to "show[] by a fair preponderance of all the evidence a legal and

7

valuable consideration . . . where he, as here, has specifically alleged a particular consideration to so prove it as alleged." *Hudson*, 130 P. at 777. But a genuine issue of material fact remains as to whether the $225,000 payment served as consideration for the promissory note, or whether it related to a different business transaction between Stocking and PCMG. Accordingly, the court DENIES Stocking's motion for summary judgment against PCMG on his third cause of action.

### B. *Simonovich*

Stocking next argues that the court should hold Simonovich personally liable for the promissory note executed by PCMG because "[a]lthough PCMG was the signer on the Promissory Note, at every stage Defendant Simonovich was the point of contact, Defendant Simonovich was the person who interacted with Plaintiff, [and] Defendant Simonovich was the individual upon whose expertise and experience Plaintiff relied." ECF No. 35 at 13. In essence, Stocking contends that Simonovich acted as PCMG's alter ego, thus allowing the court to pierce the corporate veil and enter judgment against Simonovich.[3]

But the court cannot grant summary judgment against Simonovich because it has determined that Stocking is not entitled to summary judgment against PCMG. In order to recover under an alter-ego theory, Stocking must first demonstrate that it prevails in the dispute against the corporate entity. *See Bushnell v. Barker*, 274 P.3d 968, 971 n.2 (Utah 2012) ("Before invoking an alter ego theory to pierce the corporate veil, evidence must first establish an independent basis to hold the corporation liable." (citation omitted)). In other words, even if PCMG is, in fact, the alter ego of Simonovich, Stocking has failed to demonstrate the predicate

---

[3] The court notes that, as counsel for Defendants pointed out during oral argument, Stocking failed to plead the legal theory of alter ego. Because the court denies summary judgments as to Simonovich, the court need not reach the question of whether Stocking adequately pled an alter ego theory.

liability against PCMG at the summary judgment stage. Accordingly, the court DENIES Stocking's motion for summary judgment as to Simonovich.

### C. *Sharpenter*

At oral argument, Stocking conceded that he pled count three solely against PCMG. However, in his reply, Stocking urges the court to grant summary judgment against Sharpenter as to count three. But even were the court to consider the present motion as to Sharpenter, the motion is not well taken. Stocking concedes that Sharpenter is not a party to the promissory note. ECF No. 35 at 11-12. Instead, Stocking argues that the promissory note collateralized the June 15, 2017 agreements between Sharpenter and PCMG. As evidence, Stocking points to Defendants' response brief. But Defendants' response never stated that the promissory note designated the June 15, 2017 agreement as collateral. Rather, Defendants' response states "[a]s security for Plaintiff's [$225,000] investment, Plaintiff was assigned the rights of a promissory note between Kelly Sharpenter and PCMG." ECF No. 34 ¶ 9. As discussed above, Stocking has failed to establish that he transferred $225,000 in exchange for the promissory note. If the $225,000 transfer pertained to a different deal with PCMG than the promissory note, then the transfer collateralized the June 15, 2017 agreement as to *that* deal, not as to the promissory note. In other words, Stocking's testimony only ties the collateralization of the June 15, 2017 agreement to the $225,000 transfer—not to the promissory note itself. Therefore, to the extent that Stocking fails to establish that the $225,000 is consideration for the promissory note, he cannot establish that the June 15, 2017 agreement is collateral for the promissory note.

Moreover, the promissory note itself makes no specific mention of the June 15, 2017 agreement. Indeed, it states that "[t]his Note is secured by the following security (the 'Security'): Secured by a note in the amount of $525,000 that note is secured by real estate and has been

9

assigned to lender already." ECF No. 31-1 at 2. It is possible that the "note in the amount of $525,000" is the same as the June 15, 2017 promissory note between Sharpenter and PCMG.[4] But Stocking offers no evidence—indeed, not even the Sharpenter promissory note itself, which would presumably indicate whether its value matched that of the note referenced in the promissory note—that the two notes are the same.

Because Stocking fails to establish that Sharpenter is directly liable under the promissory note, or liable because PCMG offered her promissory note as collateral for the promissory note with Stocking, the court DENIES Stocking's motion for summary judgment as to Sharpenter.

\*          \*          \*

In sum, the parties' briefing on Stocking's motion for summary judgment raised more questions than answers. And the parties were unable to resolve any of those questions at oral argument. Accordingly, the court is left with a series of questions—the most critical of which pertains to whether Stocking transferred the $225,000 in exchange for the promissory note or in reference to some other deal between Stocking and PCMG—which are exactly the sort of questions of fact that are apt for resolution by a jury.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move the court to dismiss the individual defendants, Simonovich and Sharpenter, from counts two, four, and five. The court addresses each individual defendant in turn.

---

[4] The evidence provides some support for such a possibility. The promissory note indicates that the note offered as collateral had already been assigned to Stocking. *See* ECF No. 31-1 at 2 ("Secured by a note in the amount of $525,000 that note is secured by real estate and *has been assigned to lender already*." (emphasis added)). And the complaint alleges that PCMG assigned the June 15, 2017 note to Stocking on September 28, 2017. But Stocking has not provided the court with any evidence of the alleged September 28, 2017 assignment nor any evidence that he paid the $262,500 allegedly required by the assignment. Accordingly, the contents of the September 28, 2017 assignment remain mere allegations, unsupported by evidence.

### A. Sharpenter

Defendants advance two arguments as to why the court should grant summary judgment for Sharpenter. First, Defendants allege that Stocking has adduced no evidence that he communicated with Sharpenter or made any demands of Sharpenter nor any evidence that Sharpenter ever made any payments to PCMG to which Stocking is entitled. Second, Defendants argue that, even if Stocking has a claim against Sharpenter, the instant complaint was filed prematurely.

First, assuming the assignment was valid,[5] Stocking is entitled to any payments due under the Sharpenter promissory note. Stocking has received no payments from Sharpenter or PCMG. Accordingly, it appears that either Sharpenter has breached the Sharpenter promissory note by failing to send the monthly payments due under the note *or* PCMG has breached its assignment agreement with Stocking by failing to transfer any payments it received from Sharpenter to Stocking. The court finds it difficult to provide any further analysis because neither party has provided the court with either (1) the assignment agreement or (2) the Sharpenter promissory note. But, at minimum, there is a genuine dispute of material fact as to which party is responsible for the fact that Stocking has received none of the benefits provided by the assignment agreement.

---

[5] It is not clear whether the assignment was valid. Stocking alleges that, under the terms of the assignment, "Plaintiff would transfer to PCMG $262,500.00 by wire transfer" in exchange for assignment of the Sharpenter promissory note. ECF No. 2-1 ¶¶ 8, 10. But Stocking admits that the $225,000 wire transfer was the only wire transfer he made to PCMG. ECF No. 34-1 at 10. Accordingly, it does not appear that Stocking ever completed a wire transfer of $262,500. Yet Defendants do not raise this point. Instead, Defendants appear to concede that PCMG validly assigned the Sharpenter promissory note to Stocking as security for his $225,000 investment. ECF No. 33 ¶ 7. Without a copy of the actual assignment, the court cannot make a finding as to its validity.

As to Defendants' second argument, all parties agree that the final payment under the Sharpenter promissory note was due January 1, 2020. ECF No. 34-1 at 8. Defendants argue that because Stocking originally filed his complaint in state court on January 25, 2019, any claim against Sharpenter was premature. Again, whether Stocking filed this claim prematurely is bound up in the terms of the Sharpenter promissory note. And without seeing the Sharpenter promissory note, the court cannot determine whether the note permitted the recipient to sue for missed installments prior to the final installment date. *Compare Kirkendoll v. Ent. Acquisitions, LLC*, No. 19-7942, 2020 WL 1471674, at *7 (E.D. La. Mar. 26, 2020) ("[U]nder the clear and unambiguous terms of the Promissory Note, even though Defendant has intentionally missed monthly payments, Plaintiff cannot sue to collect those missed monthly installment payments until either the Maturity Date or an event of default occurs."), *with Prop. Acceptance Corp. v. Zitin*, 414 F. Supp. 2d 534, 537-38 (E.D. Pa. 2005) (holding that "each missed payment under the Note should be considered a separate and independent default" and thus "each missed installment payment triggered a separate right to demand payment from the defendants"). Nor is the court able to determine whether the Sharpenter promissory note contains an acceleration clause—common in many promissory notes, *see Arrowood Indem. Co. v. Gibson & Behman, P.C.*, No. 08 Civ. 6227, 2011 WL 1796045, at *2 (S.D.N.Y. Apr. 29, 2011) ("Acceleration clauses are quite common." (citation omitted))—that would permit Stocking to demand immediate payment of the entire balance upon failure to pay an installment.

Like their briefing on the validity of the promissory note between Stocking and PCMG, the parties' briefing on the issue of Sharpenter's liability leaves the court with more questions than answers. And, similarly, oral argument did little to answer those questions. Because many questions of material fact remain regarding the Sharpenter promissory note and the related

assignment agreement, the court DENIES Defendants' motion for summary judgment as to Sharpenter.

### B. *Simonovich*

Defendants move for summary judgment as to Simonovich on counts two, four, and five. As an initial matter, count two alleges breach of contract against Sharpenter, not Simonovich. Accordingly, the court DENIES AS MOOT Defendants' motion as to Simonovich for count two.

As above, Defendants predicate their motion for summary judgment as to Simonovich on the fact that Simonovich cannot be personally liable for PCMG's alleged breach of contract and other misdeeds.[6] Because the court determines that there are issues of material fact as to whether Simonovich acted as the alter ego of PCMG, the court DENIES summary judgment.

"Ordinarily a corporation is regarded as a legal entity, separate and apart from its stockholders." *Dockstader v. Walker*, 510 P.2d 526, 528 (Utah 1973). However, "[t]he alter ego doctrine is an exception to the general rule that limits stockholders' liability for obligations of the corporation." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012). The Utah Supreme Court has adopted a two-prong test to determine when a party may piece the corporate veil:

> (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

---

[6] Defendants move for summary judgment as to Simonovich on counts two, four, and five. However, counts one, three, and six also make allegations against PCMG. To the extent Stocking wishes to pierce the corporate veil to hold Simonovich liable for the contracts and alleged misdeeds of PCMG, Stocking should have moved for summary judgment as to each count that claims liability against PCMG, for which Simonovich is an alleged alter ego. However, because the court DENIES summary judgment, it need not directly address this issue.

*Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979). "The first prong has been called the 'formalities requirement,' referring to the corporate formalities required by statute." *Jones & Trevor*, 284 P.3d at 635 (citation omitted). "The second prong has been called the 'fairness requirement,' and it 'is addressed to the conscience of the court.'" *Id.* (citation omitted). The Utah Supreme Court has also adopted the following eight nonexhaustive *Coleman* factors as useful considerations to aid courts in determining whether to piece the corporate veil:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a façade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Id.* at 636 (quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)). The first seven factors correspond to the formalities element of the *Norman* test, while the final factor merely reiterates the fairness element of the *Norman* test. *Id.* at 637. Indeed, there are no established factors to consider when ruling on the fairness element because this element "is simply an appeal to the conscience of the court and the court's equitable powers." *Id.* At bottom, the *Coleman* factors are nondispositive and "each alter ego case should be determined based on its individual facts by evaluating the entire relationship between the corporation and its shareholders." *Id.* at 636.

Defendants offer no evidence to dispel Stocking's assertion that Defendants violated the formalities prong. Defendants adduce no evidence regarding their capitalization, observance of corporate formalities, payment of dividends, functioning of other officers or directors, or corporate records—all of which should presumably be in Defendants' possession. Moreover, Stocking offers evidence to suggest that Simonovich used PCMG as a façade for conducting his own personal business. Specifically, in his deposition, Stocking stated that Simonovich "wanted

14

this to be kind of a deal that didn't involve Robert, and he just – it is a deal he's working on by himself and he – so then he just said, you've already got my information, let's just run it through Periphery Capital." ECF No. 34-1 at 10. Running his own personal business through the façade of the PCMG corporation provides evidence that Simonovich failed to observe the distinction between the corporation and himself. Stocking's evidence—particularly in light of the glaring lack of evidence of any corporate formalities observed—raises a genuine issue of material fact as to the formalities prong.

And Defendants repeatedly aver that Stocking cannot meet the fairness prong under *Norman*. But if, as Stocking claims, Simonovich pocketed the $225,000 wire transfer in exchange for a promissory note that he (or PCMG) never performed on, then observing the corporate form would result in injustice. But, as with many of the issues in this case, the court cannot decipher what occurred with the $225,000 payment because the parties have failed to submit many of the written agreements underlying their business relationship.

Because a genuine issue of material fact exists as to whether the court should pierce the corporate veil to hold Simonovich liable for the obligations of PCMG, the court DENIES Defendants' motion for summary judgment.

## CONCLUSION AND ORDER

At bottom, both parties have failed to provide the briefing and evidence necessary to connect the dots sufficiently for the court to grant summary judgment. Accordingly, the court DENIES both Plaintiff's and Defendants' motions for summary judgment.

DATED June 30, 2022.

                        BY THE COURT

                        _____
                        Jill N. Parrish
                        United States District Court Judge